# CASES DETERMINED

# January Term, 1906.

---

WILBERT, Administratrix, Respondent, vs. SHEBOYGAN
LIGHT, POWER & RAILWAY COMPANY, imp., Appellant.

*February 27—June 21, 1906.*

*Electricity: Duty of persons using: Negligence: Failure of lighting
company to repair defects: Escape of current to other wires.
Liability for injuries, etc.*

1. A high degree of watchfulness for the prevention of accidents is
   imposed upon persons using electric currents, and such watch-
   fulness should take into account the acts of strangers and of
   the public generally.
2. A wire which had been attached by a stranger to a tree for the
   purpose of holding it upright was fastened at the other end to
   a guy post in such a way as to be in contact with the guy wire
   of an electric light pole. It became charged with a current es-
   caping through a defective insulator from the electric lamp to
   the span wire and thence to the guy wire, and plaintiff's intes-
   tate was killed by coming in contact with the tree wire while
   it was so charged. Upon the evidence it is *held* that the jury
   were warranted in finding that these defective conditions had
   existed for such a length of time that the lighting company
   ought to have discovered and remedied them before the acci-
   dent.
3. The existence of the tree wire was not such an extraordinary and
   unusual condition that it can be said as a matter of law that it
   was not reasonably to have been apprehended in the conduct of
   the company's business.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The appellant, the *Sheboygan Light, Power & Railway
Company,* is a corporation conducting its business in the city

of Sheboygan under authority granted it by the city. It maintains the poles, wires, lamps, and station necessary for an electric lighting business. In June, 1902, it maintained a street light at the intersection of North Thirteenth street and Erie avenue. In maintaining this light it had placed one electric light pole at the northeast corner, and another at the southwest corner, of the intersection of these streets. To the tops of the poles was attached the span wire from which the street lamp was suspended. A guy wire was attached to the pole at the southwest corner of this street crossing and was also fastened, about four feet from the ground, to a guy post, placed to the west, between the sidewalk and the gutter. A thin wire had been stretched from this guy post, about four feet from the ground, to a tree, at about nine feet from the ground. The tree was located to the east and near the light pole at the southwest corner of the street crossing. This wire had been placed there by one Mr. Zurheide, who resided on the adjoining premises, for the purpose of holding the tree upright and to prevent its branches from dropping onto a railway gate near the tree. This wire was fastened to the tree by a strap and was wound around the guy post in contact with the guy wire. The street lamp, which was suspended by an interlocking device from the span wire near the center of the street crossing, had a rope attached to it which led to the light post and was used to raise and lower the lamp. When the lamp was completely raised, the only break in the metallic connection from the lamp to the span wire was an insulator of the usual type. This was placed there to prevent the electric current, which fed the lamp, from passing from the lamp to the locking device and thence to the span wire and the other connections forming a conductor for the electric current.

The complaint alleges that the *Sheboygan Light, Power & Railway Company* negligently constructed and maintained its plant at this street crossing, in that it placed the guy post with the guy wire attached too near the ground and in contact with

the span wire near the top of the light pole, and that it negligently used a defective insulator between the lamp and the span wire, and failed to exercise due care to discover the tree wire, the broken insulator, and the consequent escape of the electric current. It is further alleged that, by reason of such neglect, on the night of June 6, 1902, one Hugo Wilbert, without fault on his part, while lawfully traveling on the street crossing, came in contact with this tree wire, charged with the electric light current, which had passed through the defective insulator and thence to the locking device and the connecting wires, causing his immediate death. This action is brought to recover the damages resulting from his death.

At the conclusion of plaintiff's evidence the defendant the *Sheboygan Light, Power & Railway Company* moved for a nonsuit and also for a direction of a verdict in its favor. Both of the motions were denied. The case was then submitted to the jury upon a special verdict, and they found in effect: (1) That Wilbert was killed by an electric current by coming in contact with the tree wire; (3) that the insulator above the lamp was cracked and defective, permitting the electric current to pass from the lamp through the locking device to the span wire; (4) that the span and guy wires were in close proximity at the top of the light pole; (6) that the electric current passed from the lamp through the defective insulation, then through the locking device and the span, guy, and tree wires, and thence through Wilbert's body to the ground; (7) that this condition of the lamp, wires, and post, and the escaping electricity, made the street insufficient and dangerous at this place; (8, 9) that the defendant, in the exercise of ordinary care, ought to have discovered these defective and dangerous conditions and to have remedied them before Wilbert was killed; (10) that these defects were the proximate cause of his death; (14) that he was free from contributory negligence in coming to his death.

After verdict appellant moved for judgment notwithstand-

ing the verdict, and, in case of such motion being denied, it moved to change the answers to questions 7 and 8 of the verdict by striking out the answer "Yes" to each of them and by inserting the answer "No," and by striking out the answers to questions 9 and 10. These motions were denied, and judgment was awarded plaintiff upon the verdict as rendered by the jury. This is an appeal from such judgment.

For the appellant there was a brief by *Francis Williams,* attorney, and *W. M. Wherry, Jr.,* and *William Osgood Morgan,* of counsel, and oral argument by *Mr. Williams.* They contended, *inter alia,* that the inference by the jury that it might reasonably have been expected by a man of ordinary intelligence and prudence that a third person would trespass on the property of the defendant railway company, and for his own purposes attach to the company's guy post and loop around the company's guy wire his own trespassing wire, stringing the same to his own shade tree for the support thereof, in such a position as to obstruct the highway in violation of a municipal ordinance, is an inference that the jury should not have been permitted to draw. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141; *Radmann v. Chicago, M. & St. P. R. Co.* 78 Wis. 22; *Stone v. Boston & A. R. Co.* 171 Mass. 536, 540, 541; *Huber v. La Crosse City R. Co.* 92 Wis. 636; *Kumba v. Gilham,* 103 Wis. 312; *Sharp v. Powell,* L. R. 7 C. P. 253; *Klatt v. Milwaukee,* 53 Wis. 196; *Raymond v. Keseberg,* 91 Wis. 191; *McFarlane v. Sullivan,* 99 Wis. 361; *Doherty v. Waltham,* 4 Gray, 596; *Tutein v. Hurley,* 98 Mass. 211; *Morris v. Brown,* 111 N. Y. 318; *Mars v. Delaware & H. C. Co.* 54 Hun, 625; *Brady v. Shepard,* 42 App. Div. 24; *Malloy v. New York R. E. Asso.* 156 N. Y. 205; *Freeman v. Brooklyn Heights R. Co.* 54 App. Div. 596; *Mire v. East La. R. Co.* 42 La. Ann. 385; *Augusta R. Co. v. Andrews,* 89 Ga. 653.

For the respondent there was a brief by *Simon Gillen* and *E. R. Veech,* and oral argument by *Mr. Gillen.*

The, following opinion was filed April 17, 1906:

SIEBECKER, J.    Appellant contends that the evidence is insufficient to support the inference that the negligence complained of was the proximate cause of the injury.  The plaintiff's claim respecting the defective and dangerous condition, construction, and maintenance of the light plant is not controverted, but it is asserted that the defendant had no knowledge that the tree wire had been attached to the guy wire and post, or that the lamp insulator by cracking had become defective and unsafe, thus permitting the electric current to escape from the lamp to the span and guy wires and thence to the tree wire.  The jury found that these conditions of the plant made the street at the place of accident dangerous to persons using it for the ordinary purposes of travel, and that these dangerous conditions had existed a sufficient length of time before the accident for the defendant, in the exercise of ordinary care and diligence, to have discovered and remedied them. It is not questioned but that these defects and the dangerous condition of the street existed at the time of the accident, as claimed; but it is urged that the proof is insufficient to show that the insulator near the lamp had been out of repair for a sufficient length of time to charge the defendant with negligence in not having discovered it before the accident occurred. There is evidence tending to show that a few hours after the accident tests were made by defendant to ascertain whether the guy wire was charged with an electric current, and that it became so charged when, by raising the lamp to its full height, the locking device of the lamp attached to the span wire interlocked, indicating that the electric current charging the span, guy, and tree wires came from the lamp through the defective insulator immediately above it.    There is evidence to the effect that, in the evening before the accident, electric sparks were observed among the tree branches, near the span and guy wires, and at points some distance from the pole,

along the wires leading to this pole which supported the span and guy wires. Several witnesses testified that they had observed the branches of trees near to and in contact with these wires, and had seen parts of branches lying on the ground below, the ends being burned and charred and some of them having depressions burned into them, indicating contact with heat. It also appears that the voltage of the current was of such high potential that, if it passed to these wires, it would heat them. The time during which this burning was testified to have occurred covered a period of several weeks. The evidence tends to show that there was nothing in the appearance of things to indicate that the defective condition of the insulator may not have existed for a considerable time before the accident. There was no conflict in the proof as to the sparks of electricity among the wires at the pole and the burning of the twigs and branches. In view of the nature of the business and the circumstances of the case, we are of the opinion that the jury were justified in their inference that the defect in the insulation had existed for a sufficient time for the appellant, in the exercise of ordinary care in the conduct of the business, to have discovered and repaired it before the injury happened.

It is also contended that there is no basis for the jury's finding that defendant, in the exercise of reasonable care, ought to have discovered the dangers which caused Wilbert's death, and to have removed them before the accident, upon the ground that the existence of the tree wire was an intervention not within reasonable apprehension in the ordinary course of events. If the existence of the tree wire was not within the field of reasonable apprehension, then appellant's contention is well founded, for it cannot be charged with negligence respecting the existence of a condition not reasonably to be anticipated in the course of events. The question, therefore, is whether, under the facts and circumstances proven, the existence of this tree wire was an intervention such as

appellant should reasonably have apprehended as likely to exist. To say that a condition is reasonably to be apprehended does not imply that the exact condition proven as to the erection of this tree wire was to have been expressly contemplated, but it implies that a dangerous condition, in the nature of this one, was likely to arise in connection with the conduct of appellant's business. The danger incident to the use of electricity is imminent and lurking in character, and a high degree of watchfulness for the prevention of accidents is imposed on persons handling it. This court, referring to the care required of those handling electricity and the lurking danger to one coming in contact with live wires, stated, in *Nagle v. Hake,* 123 Wis. 256, 101 N. W. 409:

"From the very fact of these known dangers . . . [a person] must necessarily be charged with a higher degree of caution and diligence than one who is dealing with sticks and stones which can convey no such concealed death stroke." *Fitzgerald v. Edison E. I. Co.* 200 Pa. St. 540, 50 Atl. 161; *Mitchell v. Raleigh E. Co.* 129 N. C. 166, 39 S. E. 801.

The watchfulness needed to prevent such accidents should take into account the acts of strangers and the public generally. As above stated, we are of the opinion that the evidence warrants the inference drawn by the jury, that, if appellant had exercised reasonable care and diligence, it would have discovered the defective insulator and that the electric current was escaping to the connecting guy and span wires, and in the performance of this duty it would in all reasonable probability have observed the existence of this tree wire and the dangers incident to it. From this it must follow that the existence of this tree wire was not such an extraordinary and unusual condition that it can be said that, as a matter of law, it was not reasonably to be apprehended in the conduct of appellant's business. Under the circumstances the court properly held that the evidence supported the finding that the defendant, in the exercise of ordinary care, ought to have

discovered the defects and dangers complained of, and to have removed them before Wilbert's death. The following adjudications have a bearing on this subject: *Kellogg v. Chicago & N. W. R. Co.* 26 Wis. 223; *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 18 N. W. 764; *Brown v. Chicago, M. & St. P. R. Co.* 54 Wis. 342, 11 N. W. 356, 911; *Meyer v. Milwaukee E. R. & L. Co.* 116 Wis. 336, 93 N. W. 6; *Cary v. Preferred Acc. Ins. Co.* 127 Wis. 67, 106 N. W. 1055; *Morey v. Lake Superior T. & T. R. Co.* 125 Wis. 148, 103 N. W. 271; *Gilman v. Noyes,* 57 N. H. 627; *Lane v. Atlantic Works,* 111 Mass. 136; *Lowery v. Manhattan R. Co.* 99 N. Y. 158, 1 N. E. 608; *Jensen v. The Joseph B. Thomas,* 81 Fed. 578; *McCauley v. Norcross,* 155 Mass. 584, 30 N. E. 464.

We are of the opinion that the trial court properly awarded judgment on the special verdict.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied June 21, 1906.