Richard B. KERNS and Kathleen E. Kerns,
Plaintiffs-Appellants,

v.

MADISON GAS & ELECTRIC COMPANY, a
Wisconsin Corporation, Defendant-Respondent,

William CHANDLER, Mary Chandler, and
General Casualty Company of Wisconsin, a
Wisconsin corporation, Defendants.†

Court of Appeals

*No. 85–0772. Submitted on briefs July 8, 1986.—Decided October
28, 1986.*

(Also reported in 396 N.W.2d 788.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the plaintiffs-appellants the cause was submitted on the briefs of *Mark S. Young, Lawrence M. Shindell* and *James F. Boyle,* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Bruce D. Huibregtse* and *Erik T. Salveson,* and *Stafford, Rosenbaum, Rieser & Hansen,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J. Richard and Kathleen Kerns, personal injury plaintiffs, petitioned for leave to appeal from a nonfinal order granting partial summary judgment in favor of MG&E. We granted the petition. The court dismissed plaintiffs' claims that MG&E maintained its electrical transmission line below clearance requirements in violation of the electrical code, Wis. Adm. Code, sec. PSC 114 (February, 1982)[1] and the statutes, secs. 196.64,[2] 196.67[3] and 196.74,[4] Stats.

---

[1] All references to the Wisconsin Administrative Code are to the electrical code in effect on November 11, 1982, the date of Richard's accident.

[2] All statutory references are to the 1981–82 Statutes. Section 196.64, Stats. (1981–82) provides:

> If a public utility shall do or cause to be done or permit to be done any matter, act or thing prohibited or declared to be unlawful by this chapter or ch. 197, or shall omit to do any act, matter or thing required to be done by it, such public utility shall be liable to the person injured thereby in treble the amount of damages sustained in consequences of such violation.

[3] Plaintiffs do not appeal dismissal of their claim under sec. 196.67, Stats. (1981–82), (warning signs).

[4] Section 196.74, Stats. (1981–82), provides in part:

> Every public utility and every railroad which owns, operates, manages or controls along or across any public or private way any wires over which electricity or messages are transmitted shall construct, operate and maintain such wires and the equipment used in connection therewith in a reasonably adequate and safe manner and so as not to unreasonably interfere with the service furnished by other public utilities or railroads. The public service commission is

389

(1981–82), causing plaintiffs' damages. MG&E does not challenge plaintiffs' common law negligence claims on summary judgment. Because we conclude that no genuine issue of material fact exists as to whether MG&E violated the statutes or the electrical code, we affirm the trial court's order granting partial summary judgment.

## FACTS

Richard was injured in 1982 when a metal pole he was holding came in contact with an MG&E electric transmission line. MG&E acquired the line in 1917. At the time of the accident, Richard was standing on the roof of a two-story building which had been constructed beneath MG&E's line in 1946 as a one-story building. The building's second story, which reduced the line's clearance below code requirements, was constructed in 1956. It is undisputed that MG&E last modified the conductors in 1950 and that the line's clearance complied with the vertical clearance requirements of the 1944 Wisconsin State Electrical Code, Volume I which was in effect in 1950.[5] From 1956 until Richard's accident, no administrative authority required MG&E to increase the clearance. Section PSC 114.05(2).

authorized to issue orders or rules, after hearing, requiring electric construction and operating of such wires and equipment to be safe and may revise these orders or rules from time to time as may be required to promote public safety. . . . After such hearing the commission shall order any alteration in construction or location or change of methods of operation required for public safety or to avoid service interference, and by whom the same shall be made. The commission shall fix the proportion of the cost and expense of such changes, which shall be paid by the parties in interest, and fix reasonable terms and conditions in connection therewith.

[5] Wisconsin State Electrical Code, Volume 1 (5th ed. 1944).

## SUMMARY JUDGMENT METHODOLOGY

■

Section 802.08(2), Stats., provides that summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, we follow the same methodology as the trial court. That methodology is detailed in *In re Cherokee Park Plat*, 113 Wis.2d 112, 116, 334 N.W.2d 580, 582-83 (Ct.App. 1983), and we will not repeat it here.

## PLEADINGS AND AFFIDAVITS

■

Our review of the pleadings and affidavits reveals that the material facts are undisputed. The second amended complaint states a claim and MG&E's answer joins issue. Plaintiffs and MG&E submitted the affidavits of their respective experts. However these affidavits do not raise any issue of material fact. They offer conflicting opinions as to whether MG&E violated the statutes and the code and whether the "existing installation" provision applies to the line. Whether the "existing installation" provision applies and whether MG&E violated the statutes and the code are questions of law. *Backhaus v. Krueger*, 126 Wis.2d 178, 180, 376 N.W.2d 377, 378 (Ct.App. 1985). The affidavits set forth conclusions of law, not disputed facts. Where only a question of law remains, it may properly be decided on summary judgment. *Konkel v. Town of Raymond*, 101 Wis.2d 704, 707, 305 N.W.2d 190, 192 (Ct.App. 1981).

MG&E argues that the line is an "existing installation" under Wis. Adm. Code, sec. PSC 114.05(2) (February, 1982) because it was in place when the building's first and second stories were built beneath it. MG&E contends that the line complied with the code at the time Richard was injured and that compliance with the code constitutes compliance with sec. 196.74, Stats. Therefore, plaintiffs are not entitled to treble damages under sec. 196.64.

Plaintiffs argue that MG&E had a duty under the electrical code to raise the line after the 1956 addition reduced the clearance, and that MG&E cannot rely on the "existing installation" provision to relieve itself of that duty. They also argue that MG&E breached a separate statutory duty under sec. 196.74, Stats., because the line's reduced clearance was not "reasonably adequate and safe." Plaintiffs contend that MG&E's violation of sec. 196.74 entitles them to treble damages under sec. 196.64.

Plaintiffs concede that whether MG&E had a duty under the code to increase the clearance depends largely on interpretation of the code's existing installation provision, sec. PSC 114.05(2), which states:

> (a) Existing installations, including maintenance replacements, which comply with prior editions of the code, need not be modified to comply with this chapter except as may be required for safety reasons by the administrative authority.

> (b) Where conductors or equipment are added, altered, or replaced on an existing structure, the structure or the facilities on the structure need not be modified or replaced if the resulting installation

will be in compliance with the rules which were in effect at the time of the original installation.

"We interpret administrative regulations in the same manner as we interpret statutes." *Uebele v. Oehmsen Plastic Greenhouse Mfg., Inc.*, 125 Wis.2d 431, 434, 373 N.W.2d 456, 458 (Ct.App. 1985). "Interpretation of a regulation is governed by its language." *Larsen v. Wisconsin Power & Light Co.*, 120 Wis.2d 508, 513, 355 N.W.2d 557, 560 (Ct.App. 1984). If that language is plain and clearly understood, that meaning must be given to the regulation. *Stoll v. Adriansen*, 122 Wis.2d 503, 510, 362 N.W.2d 182, 186 (Ct.App. 1984). We will apply rules of construction only if the provision is ambiguous. A regulation is ambiguous if well-informed individuals could understand the regulation in different ways. *Uebele*, 125 Wis.2d at 434, 373 N.W.2d at 458. Plaintiffs do not argue that the existing installation provision is ambiguous. We conclude that the regulation is unambiguous on its face.

The language of the existing installation provision is plain and clearly understood: An existing installation which complies with prior editions of the code need not be modified to comply with the current code unless the PSC has ordered the installation brought into compliance. Section PSC 114.05(2)(a). We reject plaintiffs' argument that the existing installation provision only applies to changes in code requirements and not to changes in the installation's surroundings. The provision does not make that distinction.

Because the line was in place when both stories were constructed, it is an existing installation. MG&E's compliance with the code is determined under the 1944

code, which was in effect when MG&E last modified the conductors in 1950. Order 1013(B), Wisconsin State Electrical Code, Volume I (5th ed. 1944).[6] It is undisputed that the line complied with the applicable 1944 clearance requirements and that the PSC has not ordered MG&E to raise the line. Therefore, the line complied with the code at the time of Richard's 1982 accident.

Plaintiffs cite several cases from other jurisdictions to support their contention that MG&E cannot rely on the existing installation provision. *Ruhs v. Pacific Power & Light*, 671 F.2d 1268 (10th Cir. 1982), involved an existing installation provision. However, the *Ruhs* court could not conclude as a matter of law that the existing installation provision applied because it was unclear if the installation complied with a prior edition of the code. Here, it is undisputed that MG&E's line complied with the 1944 electrical code.

The rest of plaintiffs' cases are distinguishable because they do not involve an existing installation provision. In *Phelps v. Magnavox Company of Tennessee*, 497 S.W.2d 898 (Ct.App. Tenn. 1972), relocated power lines did not meet the applicable clearance requirements. The case did not involve an existing installation. In *Arkansas Power & Light Co. v. Johnson*, 538 S.W.2d 541 (Ark. 1976), the utility's line complied with code

---

[6] Order 1013 of the Wisconsin State Electrical Code, Volume I (5th ed. 1944) provides in part:

> (B) The intent of the orders will be realized (1) by *applying the orders in full to all* new installations, reconstructions, *alterations* and extensions, except where any order is shown to be impracticable for special reasons or where the advantage of uniformity with existing construction is greater than the advantage of construction in compliance with the orders, providing the existing construction is reasonably safe . . . . [Emphasis added.]

requirements but the utility was found liable in common law negligence. The case is inapposite because plaintiffs' common law claims are not at issue in the instant case; MG&E has challenged only their statutory and code claims. *Miller v. Leavenworth-Jefferson Elec. Co-op.*, 653 F.2d 1378 (10th Cir. 1981) did not arise under the existing installation provision. *Arkansas-Missouri Power Co. v. Davis*, 262 S.W.2d 916 (Ark. 1953), presented a jury question of whether the utility negligently maintained a power line near a billboard. *Pape v. Kansas Power and Light Co.*, 647 P.2d 320 (Kan. 1982), did not involve the electrical code.

The Wisconsin cases cited by plaintiffs are also distinguishable. Neither *Wilbert v. Sheboygan, L., P. & R. Co.*, 129 Wis. 1, 106 N.W. 1058 (1906), nor *Sandeen v. Willow River Power Co.*, 214 Wis. 166, 252 N.W. 706 (1934), addresses the electrical code or ch. 196, Stats.

We reject plaintiffs' argument that MG&E had a separate duty to increase the clearance under sec. 196.74, Stats. Section 196.74 authorizes the PSC to "issue orders or rules ... requiring electric construction and operating of such wires and equipment to be safe." Section 227.014, Stats.,[7] authorizes the PSC "to adopt such rules interpreting the provisions of statutes enforced or administered by it as it considers to be necessary to effectuate the purpose of the statute . . . ." Pursuant to this statutory authority, the PSC promulgated Volume I of the Wisconsin State Electrical Code which includes the existing installation provision. Section PSC 114.03(1). "Administrative regulations enacted pursuant

---

[7] Section 227.014, Stats., was in effect in 1982. It was repealed by 1985 Wis. Act 182, sec. 19. The substance of sec. 227.014 is now found in sec. 227.11 as created by 1985 Wis. Act. 182, sec. 34. All changes were effective April 22, 1986.

to statutory rule-making authority have the force and effect of law." *State v. Menard, Inc.*, 121 Wis.2d 199, 204, 358 N.W.2d 813, 816 (Ct. App. 1984). Plaintiffs do not challenge the PSC's authority to enact the existing installation provision. We conclude that the provision implements the "reasonably adequate and safe" standard found in sec. 196.74.

Because PSC regulations have the force and effect of law, the PSC's interpretation of what is reasonably adequate and safe "is controlling and determinative." *See Thomson v. Racine*, 242 Wis. 591, 596, 9 N.W.2d 91, 94 (1943) (where municipality's ordinance conflicted with PSC order, PSC order was controlling and determinative as to the type of protection required at railroad crossings, in view of rule that PSC orders have the force and effect of law). In a case arising under the safe place statute, our supreme court said:

> Under sec. 101.09 [, Stats.,] the Industrial Commission has the power to make and enforce lawful orders for the purpose of securing the safety of employees and frequenters of public buildings. When the commission does make a lawful order, and it is complied with, the safety of the place involved is conclusively established, at least in so far as the subject matter of the order is concerned. Thus when an order of the commission is claimed to be applicable, the sole question is whether the structure conforms to the order. If it does, the jury may not substitute its conclusions as to its safety for those of the body vested by statute with the power to determine this matter.

*Bent v. Jonet*, 213 Wis. 635, 645, 252 N.W. 290, 293 (1934). Therefore, compliance with the existing installation provision constitutes compliance with sec. 196.74, Stats. The statute does not create a separate duty which

MG&E must discharge independent of compliance with the code. Because MG&E's line complied with the existing installation provision in effect at the time of the accident, MG&E did not violate sec. 196.74 or the code. Absent a violation of sec. 196.74, plaintiffs are not entitled to treble damages under sec. 196.64.

Plaintiffs' argument that sec. 196.74, Stats., sets forth a separate duty is an attempt to engraft common law duties onto the statute. MG&E does not challenge plaintiffs' common law negligence claims on summary judgment. These claims remain for trial.

> [It] is . . . well-established . . . that the enactment of safety statutes or legislation giving a commission jurisdiction over a certain activity does not abolish the duty arising under common-law negligence. We stated in *Blanchard v. Terpstra*, (1967), 37 Wis.2d 292, 299, 155 N.W.2d 156:
>
> " . . . a safety statute merely establishes a minimum standard of care and the conduct, even though sanctioned or in conformity with the statute, is not thereby necessarily relieved of conforming to the common-law requirements of ordinary care. In any event the establishment of a statutory definition of negligence per se does not thereby result in a preemption of the entire negligence question. There remains a question of possible common-law negligence." [Footnote omitted.]

*Kemp v. Wisconsin Electric Power Co.*, 44 Wis.2d 571, 579, 172 N.W.2d 161, 164 (1969).

Plaintiffs argue that a change in the area over which transmission lines pass creates a duty under the code to bring the line into compliance, citing *Wisconsin Power & Light Co. v. Gerke*, 20 Wis.2d 181, 121 N.W.2d 912 (1963). Plaintiffs' reliance on *Gerke* is misplaced.

*Gerke* did not involve the existing installation provision. *Gerke* arose under sec. 66.047, Stats. (1959), and involved a dispute between a utility and a contractor building a highway beneath a transmission line. The utility refused to relocate the line to accommodate the construction. *Gerke* is factually and legally inapposite to this case.

██

Because it is undisputed that MG&E's transmission line complied with the existing installation provision and sec. 196.74, Stats., we conclude that MG&E is entitled to summary judgment as to plaintiffs' statutory and code claims.

*By the Court.*—Order affirmed.